IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MARK BROWN,

                Plaintiff,

v.

NANCY GARCIA and MARIROSE HOWELL,

                Defendants.

OPINION & ORDER

16-cv-775-jdp

---

Pro se plaintiff and prisoner Mark Brown is proceeding on a claim that defendants Nancy Garcia and Marirose Howell (both nurses) failed to give him appropriate treatment for various symptoms he was experiencing between late September 2015 and late November 2015, in violation of the Eighth Amendment. Defendants have filed a motion for summary judgment, Dkt. 27, which is ready for review.

In his complaint, Brown alleged that he was suffering from symptoms such as high blood pressure, dizziness, blurred vision, headaches, and an irregular heartbeat, but defendants failed to schedule a medical appointment for him or conduct any tests. The undisputed facts show now that defendants were not aware of many of Brown's requests for treatment and that, when they did examine Brown, the treatment they provided was not blatantly inappropriate. Under those circumstances, Brown cannot prevail on his claim, so the court will grant defendants' motion for summary judgment.

After the parties finished briefing defendants' summary judgment motion, Brown filed a letter that I interpret to be a request for assistance in recruiting counsel. Dkt. 38. He says that another prisoner has been helping him with the case, but he needs a lawyer now because he was transferred to a different prison. Because the transfer occurred after the parties

completed briefing defendants' summary judgment motion and Brown does not ask the court to give him another chance to file summary judgment materials, I will deny this request as moot.

UNDISPUTED FACTS

The following facts are undisputed.

At the time relevant to this case, plaintiff Brown was a prisoner at the Waupun Correctional Institution, which is in Waupun, Wisconsin. Defendant Garcia was an advanced practice nurse prescriber and was Brown's primary care provider. Defendant Howell was a registered nurse.

Defendants describe Brown as having "chronic kidney disease." Dkt. 35, ¶ 9. At the time Brown entered the Wisconsin Department of Corrections in 2010, he had been diagnosed with "hypertension stage II," or elevated blood pressure.[1] Chronic elevated blood pressure can cause kidney damage. Brown's creatine level was 1.41 mg/DL, which is above the normal range of .50-1.30 mg/DL. Chronic elevated creatinine levels indicate impaired kidney function.

Over the years, Brown has been prescribed medication to control his blood pressure. His blood pressure, blood sugar, Vitamin D levels, and parathyroid glands have been monitored to ensure no further progression of his conditions. He also received a renal ultrasound.[2]

---

[1] The parties do not say how elevated Brown's blood pressure was in 2010, but, according to the Mayo Clinic, stage two hypertension is systolic pressure of 140 mm Hg or higher or a diastolic pressure of 90 mm Hg or higher. "High blood pressure (hypertension)," *available at* https://www.mayoclinic.org/diseases-conditions/high-blood-pressure/diagnosis-treatment/drc-20373417 (last visited May 23, 2018). *See also Jackson v. Pollion*, 733 F.3d 786, 788 (7th Cir. 2013) ("'Ideal' blood pressure is considered to be below 120/80, but the top of the normal range is 140/90.").

[2] A renal ultrasound is "a noninvasive diagnostic exam that produces images, which are used to

When a prisoner wants medical treatment, he may submit what is called a "health service request. In a request dated September 28, 2015, Brown said he was experiencing "a bad headache" and "blur[red] vision." He was concerned that his blood pressure was rising. In response, a nurse checked the box next to "NP/PA" and wrote "soon" on the form. Dkt. 31-1, at 28.[3] In a request dated October 1, 2015, Brown wrote that he was still suffering from a headache and blurred vision. He believed that his symptoms were the result of high blood pressure and he wanted to see the nurse. A nurse signed the request on October 2, but did not otherwise write anything on the request.

On October 5, a nurse took Brown's blood pressure. The results showed that his blood pressure was 134/98, which Garcia describes as "slightly higher than normal." Dkt. 35, ¶ 32. The nurse scheduled Brown for an appointment at the hypertension chronic care clinic.

On October 7, 2015, Garcia examined Brown. His blood pressure was still elevated (140/90), so Garcia increased the dose of his blood pressure medication (Metroprolol) to 50 mg twice a day. (The parties don't say what dose Brown was taking before.) Garcia's goal was to keep Brown's blood pressure under 140/90. When a nurse reported a week later that Brown's blood pressure remained elevated (150/98), Garcia increased his medication again, this time to 100 mg of Metroprolol twice a day.

On October 22, staff conducted lab tests on Brown's blood. His creatine level was 1.40, which was about the same as it was when Brown enter the Department of Corrections in 2010.

---

assess the size, shape, and location of the kidneys. Ultrasound may also be used to assess blood flow to the kidneys." "Kidney ultrasound," *available at* https://www.hopkinsmedicine.org/healthlibrary/test_procedures/urology/kidney_ultrasound_9 2,p07709 (last visited May 23, 2018).

[3] Unless expressly stated, any reference to a "nurse" relates to someone who is not a defendant.

In a request dated October 30, 2015, Brown wrote that he was "having slight back pain on both sides" and that his urine "come[s] out very very yellowish and [has] a little smell to it." Brown wondered whether these symptoms were being caused by his new blood pressure medication. Brown also wrote that, while lying down, he could "feel [his] heart do a double beat more than usual." He asked "to see the doctor and have more test[s] done." Dkt. 31-1, at 33.

A nurse examined Brown on November 3. His blood pressure was 146/90.

Garcia examined Brown again on November 12, 2015. The purpose of the exam was to follow up on an injury to Garcia's hand, but Garcia took Brown's blood pressure, which was 154/94. Because Brown complained that he was out of blood pressure medication, staff called Garcia's unit to make sure his medication had been transferred there.

On November 13, a nurse took Brown's blood pressure again, showing that it was 120/80, which is normal.

On November 20, defendant Howell examined Brown. The purpose of the appointment was related to a hand injury, but Howell also took Brown's blood pressure and heart rate. His blood pressure was 140/110 and his heart rate was 60.

On November 27, Howell examined Brown, again as a follow up for a hand injury. His blood pressure was 130/90 and his heart rate was 64.

In a health service request dated November 30, 2015, Brown wrote that he was still concerned about his blood pressure and kidney function and that his urine was "coming out very yellowish." He wanted to know "what's the next step." In response, a nurse wrote that "appointments are behind schedule" and that Brown was on the schedule to be seen.[4]

---

[4] The parties do not say what treatment Brown received after November 30. Defendants say

Neither defendant saw any of Brown's health service requests.

ANALYSIS

A prison official violates a prisoner's Eighth Amendment right to medical care if the official is "deliberately indifferent" to a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). The condition does not have to be life threatening. *Id.* A medical need may be serious if it "significantly affects an individual's daily activities," *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997), if it causes significant pain, *Cooper v. Casey*, 97 F.3d 914, 916–17 (7th Cir. 1996), or if it otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer v. Brennan*, 511 U.S. 825 (1994). "Deliberate indifference" means that the officials are aware that the prisoner needs medical treatment, but are disregarding the risk by consciously failing to take reasonable measures. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997). In the context of a claim against medical professionals, deliberate indifference may be inferred only if the defendants' treatment decisions are "blatantly inappropriate" or represent "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on [medical] judgment." *King v. Kramer*, 680 F.3d 1013, 1018–19 (7th Cir. 2012) (internal quotations omitted).

---

that Brown was "discharge[d] from the Department in December 2015," Dkt. 35, ¶ 45, suggesting that he was released from prison then.

Thus, a claim under the Eighth Amendment for failing to provide adequate medical care has three elements:

(1) Did the prisoner need medical treatment?

(2) Did the defendant know that the prisoner needed treatment?

(3) Despite his or her awareness of the need, did the defendant consciously fail to take reasonable measures to provide the necessary treatment?

On a motion for summary judgment, it is the plaintiff's burden to show that a reasonable jury could find in his favor on each of these elements. *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999).

A threshold problem for Brown is that he does not cite any evidence showing that he was harmed or even subjected to a risk of harm as a result of an alleged failure by defendants to provide additional treatment. As defendants note, the court of appeals has held that a short-term increase in blood pressure is not a serious medical need in and of itself. *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). Rather, high blood pressure may be a symptom of increased risk of other serious problems, such as a stroke or a heart attack. *Id.*

In this case, Brown does not cite any evidence or even allege that the rise in his blood pressure in October and November 2015 caused any adverse health consequences for him, either short term or long term. For example, he does not say that it had any effect on his kidney disease. And blood work taken during the relevant time did not show that his condition had deteriorated.

In his brief, Brown states repeatedly that he was suffering from "emergency high blood pressure," that he "almost died," and that he has "more damage to his organs." Dkt. 33, at 2. But these are just statements in his brief. He cites no evidence to support them.

6

"No matter how serious a medical condition is, the sufferer from it cannot prove tortious misconduct (including misconduct constituting a constitutional tort) as a result of failure to treat the condition without providing evidence that the failure caused injury or a serious risk of injury. For there is no tort—common law, statutory, or constitutional—without an injury, actual or at least probabilistic." *Jackson*, 733 F.3d at 790. Because Brown has not cited evidence showing that he was harmed, defendants are entitled to summary judgment on that ground.

Defendants are also entitled to summary judgment on the ground that no reasonable jury could find that either defendant consciously failed to provide reasonable treatment to Brown. As to Garcia, she saw Brown twice during the relevant time. On October 7, 2015, Garcia increased the dose of Brown's blood pressure medication after observing this his blood pressure was elevated. She increased it again a week later when his blood pressure was still elevated. On November 12, when Brown's blood pressure remained elevated and Brown reported that he had run out of medication, Garcia called his housing unit to make sure that he would receive an adequate supply.

No reasonable jury could find that Garcia's conduct was blatantly inappropriate under the circumstances. Both times Garcia examined Brown, she took steps to provide care. Brown does not contend that increasing his blood pressure medication was the wrong choice and he does not identify anything else that he believes Garcia should have done. Perhaps if Brown's blood pressure had remained abnormally high for a longer period of time, additional steps might be required, but the relevant time period was only a few weeks. By December 2015, Brown's blood pressure was going down and within the normal range.

The case against Howell is even weaker. She also saw Brown twice, but both times for reasons unrelated to this case. Although she took his blood pressure both times, by that time, it was going down. Again, Howell does not identify any particular treatment that Howell should have provided.

In his complaint, Brown alleged that staff failed to conduct necessary testing. But it is undisputed that Brown received blood work during the relevant time and the test results did not indicate that his condition was worsening. He does not identify any other testing that he should have received.

Brown also alleged in his complaint that defendants failed to schedule timely appointments for him after he filed health service requests. But it is undisputed that defendants did not *see* any of those requests, so any delay in scheduling an appointment was not defendants' fault.

In sum, Brown has failed to present evidence showing that he was harmed or that defendants consciously failed to provide appropriate treatment. Defendants are entitled to summary judgment on both grounds.

ORDER

IT IS ORDERED that:

1. The motion for summary judgment filed by defendants Nancy Garcia and Marirose Howell, Dkt. 27, is GRANTED.

2. Plaintiff Mark Brown's motion for assistance in recruiting counsel, Dkt. 38, is DENIED as moot.

3. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered June 4, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge